UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-00089-JAW-1 |
| | ) | |
| AIDAN J. CARTER | ) | |
| | ) | |

**ORDER ON MOTION FOR ISSUANCE OF SUBPOENAS**

With the alleged victims' support, the government moves to quash a defendant's subpoenas directed to the alleged victims, requesting documents and materials about them, including their medical and therapy records. Finding the defendant's subpoenas an overbroad and burdensome fishing expedition the court denies the defendant's motion for subpoenas and dismisses the government's motion to quash as moot.

## I.    BACKGROUND

On June 4, 2025, a federal grand jury issued a two-count indictment of Aidan J. Cater, charging him with simple assault, an alleged violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506(1) and abusive sexual contact, an alleged violation of 18 U.S.C. § 2246(3) and 49 U.S.C. § 46506(1). *Indictment* (ECF No. 17). Specifically, count one of the indictment alleges that on December 20, 2024, in the District of Maine, while in the special aircraft jurisdiction of the United States, Mr. Carter assaulted another person, Minor Victim 1 (MV1), and count two of the indictment alleges that on December 20, 2024, in the District of Maine, while in the special aircraft jurisdiction of the United States, Mr. Carter knowingly engaged in

sexual contact as defined in 18 U.S.C. § 2246(3), with another person, Minor Victim 2 (MV2), without that other person's permission, in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506(1). *Id.* at 1.

On October 23, 2025, Mr. Carter filed a motion for issuance of subpoenas on MV1 and MV2 pursuant to Federal Rule of Criminal Procedure 17(c)(3). *Def.'s Am. Mot. for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3)* (ECF No. 44) (*Def.'s Mot.*). On November 3, 2025, the Government responded with a motion to quash the subpoenas. *Gov't's Mot. to Quash Def.'s Am. Mot. for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3)* (ECF No. 51) (*Gov't's Mot. to Quash*). On November 12, 2025, Mr. Carter replied to the Government's objection. *Def.'s Resp. in Opp'n to the Gov't's Mot. to Quash and Reply to the Gov't's Obj. to the Def.'s Mot. for Issuance of Subpoenas* (ECF No. 61) (*Def.'s* Reply).

Jury selection took place on December 1, 2025, *Min. Entry* (ECF No. 105), and this case is scheduled for jury trial to commence on December 10, 2025. *Final Pretrial Order* (ECF No. 59). The parties held a conference of counsel to address the motion to quash on November 18, 2025. *Min Entry* (ECF No. 79).

## II. THE PARTIES' POSITIONS

### A. Aidan Carter's Motion for Issuance of Subpoenas

Mr. Carter moves for an order allowing service of a subpoena on MV1 and MV2 pursuant to Rule 17(c)(3). Fed. R. Crim. P. 17(c)(3). Mr. Carter seeks three categories of documents. First, "[a]ll texts, messages, communications, or other regarding, referencing, or relating to the alleged assaults on or about December 20, 2024." *Def.'s*

*Mot.* at 4. Second, "[a]ll documentary evidence revealing the identities of any person with whom MV1 or MV2 have sent or received communications regarding, referencing or relating to the alleged assaults on or about December 20, 2024." *Id.* Third, "[a]ll medical records, therapy records or treatment records mentioning, regarding, referencing or relating to the alleged assaults on or about December 20, 2024." *Id.*

Mr. Carter argues that "common sense and experience" suggest "it is highly likely there are texts and communications from and to MV1 and MV2 referencing and relating to these alleged assaults." *Id.* Further, Mr. Carter maintains "it is highly likely that any therapy or medical treatments for MV1 and MV2 would reference the facts and circumstances of these assaults." *Id.*

## B.    The Government's Motion to Quash

The Government moves to quash the subpoena and asks the Court not to issue an order to the victims to produce what the Government sees as "overly burdensome documents and information." *Gov't's Mot. to Quash* at 1. Applying the relevant standard, the Government argues Mr. Carter has not demonstrated he is entitled to Rule 17 subpoenas on MV1 and MV2 and it also explains that some of the materials Mr. Carter seeks are privileged and all implicate privacy interests. *Id.* at 7-15.

Expanding on the first argument, the Government contends that Mr. Carter has not met his burden to prevail on a Rule 17 subpoena. *Id.* at 7. The Government says Mr. Carter "fails to show the materials he seeks are relevant" because Mr. Carter "fails to provide any facts or foundation upon which one could conclude it is 'highly

likely' that such records even exist, and if they do, whether they contain information probative on the central issue of the defendant's guilt or innocence." *Id.* The Government then explains that "the information sought is not evidentiary" because "[a]lthough the Defendant's Motion does not outrightly state this reason, his motivation to request the subpoenas appears . . . to [be to] obtain impeachment evidence" which the Government says is impermissible. *Id.* at 9. Addressing admissibility, the Government contends that "the information contained within these records may be excluded" under several rules of evidence. *Id.* at 10.

The Government also takes issue with the lack of specificity in Mr. Carter's requests. *Id.* The Government points out that "the Defendant did not even specify a date range for all sources of records sought, and the incident occurred nearly eleven months ago." *Id.* Further, the subpoena "does not specify the platforms or types of communications being sought nor if the subpoena were issued, how the victims would be expected to comply to produce this information." *Id.* As to medical records, the Government considers "[t]he essence of the Defendant's request [to] require the victims of a single touching incident to obtain and comb through every record of any possible provider falling under this vast umbrella for any potential offhand remark about this federal criminal case." *Id.* at 11-12. According to the Government, "[w]hat is apparent is that the Defendant is seeking to use this subpoena via Rule 17(c) as a general discovery device, which has been deemed improper." *Id.* at 12 (citing cases).

### C.    Mr. Carter's Reply

In his reply, Mr. Carter first refines his request of the Court, asking "that this

Court order that any responsive materials regarding, referencing, or relating to the alleged assaults on or about December 20, 2024, be produced for *in camera* review and that this Court determine whether those materials contain potentially exculpatory evidence." *Def.'s Reply* at 3. Mr. Carter points out that "[t]he central issue in this case is whether the Defendant's actions constituted 'sexual contact' within the meaning of 18 U.S.C. § 2246(3). *Id.* at 1. Comparing the Government's depiction of the alleged touching incidents, *Gov't's Mot. to Quash* at 3, with MV2's account given at her forensic interview, Mr. Carter contends that the Governments "description of the 'sexual contact' appears to be the formulation of counsel rather than the words of MV2." *Def.'s Reply* at 2.

Mr. Carter explains that "[a]lthough the victims have an absolute right to be treated fairly, if the victims have evidence in which the incident is described differently than as proffered by the Government, there is a significant risk of a gross injustice and a violation of the Defendant's Sixth Amendment right to Compulsory Process." *Id.* at 4 (citing U.S. CONST., amend. VI and relevant case law). Explaining further, Mr. Carter reasons "[i]f the victims in this federal felony case provided any information about this alleged 'sexual contact' that differs from what was set forth by the Government, that information constitutes crucial exculpatory evidence that carries with it collateral consequences under the Sex Offender Registration and Notification Act (SORNA)." *Id.* at 5.

Moving to the applicable standard for good cause under Rule 17, which responds to the Government's first argument, Mr. Carter argues that he has met his

burden. The "potentially exculpatory documents and materials . . . are evidentiary and relevant." *Id.* at 6. Contrary to the Government's contention that Mr. Carter is impermissibly engaging in a speculative fishing expedition for impeachment material, *see Gov't's Mot. to Quash* at 9, in camera review of responsive materials goes to the heart of whether the events of December 20, 2024 unfolded as the Government alleges. *Id.* at 6-7. As to privilege and privacy concerns, Mr. Carter says the documents and materials would be subject to in camera review prior to trial to protect the victims' privacy rights. *Id.* at 8.

## III.    LEGAL STANDARD

"To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *United States v. Nixon*, 418 U.S. 683, 709 (1974). "Rule 17(c) is the mechanism by which such process is sought and obtained in federal criminal proceedings." *United States v. McLellan*, No. 16-CR-10094-LTS, 2018 U.S. Dist. LEXIS 232365, *8 (D. Mass. Jan. 19, 2018). Rule 17(c) was enacted "not . . . to provide an additional means of discovery" but rather "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698-99.

Rule 17(c)(3) governs issuance of subpoenas for personal or confidential information about a victim in a criminal case. FED. R. CRIM. P. 17(c)(3). The Rule specifies that subpoenas covering such information "may be served on a third party only by court order" and that "[b]efore entering the order and unless there are

exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." *Id.*

The First Circuit, echoing the Supreme Court, explained that to withstand a motion to quash, the party requesting the subpoena must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. LaRouche Campaign*, 841 F.2d 1176, 1179 (1st Cir.1988) (quoting *Nixon*, 418 U.S. at 699-700).

As the *Nixon* Court explained, "against the background" of the four factors, the party seeking production must clear three hurdles: "(1) relevancy; (2) admissibility; (3) specificity" to compel production under Rule 17(c). *Nixon*, 418 U.S. at 700; *see also LaRouche Campaign*, 841 F.2d at 1179. A subpoena that fails to satisfy the three hurdles will be deemed unreasonable or oppressive and must be either quashed or modified. *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) (discussing *Nixon* as "holding that a subpoena duces tecum is not 'unreasonable or oppressive' if the proponent establishes relevancy, admissibility, and specificity").

## IV.   DISCUSSION

The Court begins by addressing which of Mr. Carter's three requested categories of material are relevant, admissible, and specific for purposes of compelling

production under Rule 17(c).[1]  Finding none, the Court declines to apply the *Nixon* factors.

## A.    Relevancy, Admissibility, and Specificity

None of Mr. Carter's three categories of requested material clears the three hurdles of relevancy, admissibility, and specificity.  As to relevancy, there must be a "sufficient likelihood" that the subpoenaed records are "relevant to the offenses charged in the indictment."  *Nixon*, 418 U.S. at 700 (internal citation omitted).  There must also be a "sufficient preliminary showing" that the subpoenaed material "contains evidence admissible with respect to the offenses charged in the indictment."  *Id.* at 701.  Third, the party seeking the subpoenaed documents shoulders the burden of "show[ing] the evidentiary nature of the requested material with appropriate specificity."  *United States v. Shinderman*, 232 F.R.D. 147, 149 (D. Me. 2005).

### 1.    The First Requested Category of Material Lacks Specificity

Mr. Carter first requests "[a]ll texts, messages, communications, or other regarding, referencing, or relating to the alleged assaults on or about December 20, 2024."  *Def.'s Mot.* at 4.  Mr. Carter argues that "[i]n their forensic interviews, both MV1 and MV2 stated that they were actively texting and messaging" about the incidents.  *Id.* at 2.  Though the Government obtained and turned over to the

---

[1]    As a preliminary matter, the Court notes that the three hurdles are not necessarily a prerequisite to the four *Nixon* factors, but instead a concurrent inquiry into whether the subpoena will be deemed unreasonable and oppressive.  Here, the Court examines the three hurdles because they are dispositive.

Defendant contemporaneous communications between MV1 and MV2, *see id.*, it stands to reason MV1 and MV2 would continue to communicate about the incidents long enough to provide exculpatory or inculpatory evidence that Mr. Carter seeks to subpoena though order of this Court.

However, defense counsel has made no effort to tell the Court how he plans, specifically, to obtain those communications beyond in camera review. *Def.'s Reply at 2.* Assuming MV1 and MV2's cellphone communication still exists on their cellphones, Mr. Carter is not entitled to require MV1 and MV2 simply turn over their cellphones to his attorneys for their inspection. In *Riley v. California*, 573 U.S. 373 (2014), the United States Supreme Court wrote that "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Id.* at 403 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1885)). The Court reasonably assumes that the victims' cellphone communications from December 20, 2024 to date, a period of nearly one year, necessarily contain reams of private and irrelevant information, and the Court will not require the victims to perform a relevancy search for the Defendant.

The Defendant's request thus fails on the issue of specificity or, put differently, the Defendant has made no suggestion as to how as a practical matter, the Court could protect the victims' privacy rights in attempting to provide him with speculative evidence. Defense counsel identified neither search terms nor proposed protocols a forensic expert might use to capture relevant communications between the victims. Importantly, defense counsel did not explain how to ensure the privacy and security

of MV1 and MV2's communications that have nothing to do with the December 20, 2024 incidents.

Mr. Carter has failed to narrowly circumscribe his requested search and propose a tight protocol to avoid offending the victims' privacy rights.  However, even if Mr. Carter proposed such a protocol, the Court would view this request as a classic fishing expedition forbidden by the Supreme Court in *Nixon*, 418 U.S. 683 at 699, and by the First Circuit in *LaRouche Campaign*.  Based on the record before it, the Court would not have approved such a broad and unrestrained request.  841 F.2d at 1179.

### 2.    The Second Requested Category of Material is Overly Broad and Burdensome

Mr. Carter's second category of requested material is overly broad and burdensome.  It seeks "[a]ll documentary evidence revealing the identities of any person with whom MV1 or MV2 have sent or received communications regarding, referencing or relating to the alleged assaults on or about December 20, 2024." *Def.'s Mot.* at 4.  As to relevance and admissibility, Mr. Carter makes no showing that the material contains admissible evidence relevant to the offenses charged or even that such material exists.  Although Mr. Carter notes that the victims stated in their forensic interviews that they "were actively texting and messaging others," *id.* at 2, Mr. Carter does not provide the Court predicate facts suggesting either victim communicated with anyone in particular about the alleged assaults.  Therefore, the Court denies Mr. Carter's subpoena seeking "[a]ll documentary evidence revealing the identities of any person with whom MV1 or MV2 have sent or received communications regarding, referencing or relating to the alleged assaults on or about

December 20, 2024." Again, the Court views this request as impermissibly overbroad and another forbidden fishing expedition.

### 3.    The Third Requested Category of Material Amounts to an Impermissible Fishing Expedition

#### a.    Medical Records for Both Victims and Therapy Records for MV1

Mr. Carter's third category requests "[a]ll medical records, therapy records or treatment records mentioning, regarding, referencing or relating to the alleged assaults on or about December 20, 2024." *Def.'s Mot.* at 4.  In its motion to quash, the Government informed Mr. Carter that "neither victim sought medical treatment, and MV1 never has even been to therapy." *Id.* at 9.  It substantiated this assertion with declarations from MV2's Father, *Gov't's Mot. to Quash*, Attach. 1 *Decl. by Father of MV2 in Resp. to Def.'s Am. Mot. for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3)* (*Father's Decl.*), MV2's Mother, *id.*, Attach 2 *Decl. by Mother of MV2 in Resp. to Def.'s Am. Mot. for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3)* (*Mother's Decl.*), and MV1, who turned eighteen after December 20, 2024.  *Id.*, Attach. 3 *Decl. by MV1 in Resp. to Def.'s Am. Mot. for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3)* (*MV1's Decl.*). MV2's parents each declared that MV2 "did not receive any medical treatment following the incident" and "so no 'medical' or 'treatment records' . . . exist." *Father's Decl.* ¶ 5; *see also Mother's Decl.* ¶ 5. MV1 declared the same.  *MV1's Decl.* ¶ 6. MV1 further declared she had "not attended therapy . . . so any therapy records that the Defendant is seeking . . . similarly do not exist." *Id.* ¶ 7.  This leaves only the possibility that MV2 had received some psychotherapy before and after the December

20, 2024 incident, and the Court therefore turns to that issue.

### b.    Therapy Records for MV2

Based on the victim affidavits, the Court concludes that the only portion of Mr. Carter's third request for materials relating to MV2's "therapy records . . . mentioning, regarding, referencing or relating to the alleged assaults on or about December 20, 2024" are potentially subject to subpoena.  However, the Court determines that even if they exist, the request in the third category is an overbroad fishing expedition and the records are privileged.  Thus, the Court denies Mr. Carter's motion for a Rule 17 subpoena.

### i.    The    Sixth    Amendment    and    the Psychotherapist-Patient Privilege

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him [and to] have compulsory process for obtaining witnesses in his favor."  U.S. CONST. Amend. VI.  Evidentiary privileges, on the other hand, "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," except as otherwise provided.  F. R. EVID. 501.

The Supreme Court created a federal psychotherapist-patient privilege covering "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment."  *Jaffee v. Redmond*, 518 U.S. 1, 15-16 (1996).  The *Jaffee* Court extended this privilege to "licensed social workers."  *Id.* at 15.  In establishing the privilege, the Supreme Court rejected the idea that the

psychotherapist-patient privilege contains a balancing component, stating that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17. The Supreme Court in *Jaffee* did not address all conceivable questions regarding the contours of the psychotherapist-patient privilege. *Id.* at 18; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998) (not reaching the issue of whether "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the [attorney-client] privilege"). Thus, the interplay between the Sixth Amendment and the psychotherapist-patient privilege is not a matter of well settled law.

Citing the psychotherapist-patient privilege, the Government argues that "[i]n the context of criminal cases, particularly where the Defendant only provides vague or conclusory reasons for seeking the victim's mental health records as he does here, the Sixth Amendment does not override this psychotherapist-patient privilege." *Gov't's Mot. to Quash* at 14.

Mr. Carter counters that the psychotherapy privilege issue is not as cut and dried as the Government would have it. He maintains that the privilege is not absolute and yields to the defendant's right to effectively cross examine a witness in a criminal case. *Def.'s Reply* at 9-10. At bottom, Mr. Carter proposes "[i]f materials do exist that contain exculpatory evidence, this Court should conduct an *in camera* review to ensure that potentially exculpatory evidence is produced while protecting

the victims' privacy rights." *Id.* at 10.  Mr. Carter has also represented to the Court

that he seeks only plainly exculpatory records from MV2's therapist.

### ii.        Aiden Carter Has the Wrong Party

The current subpoena seeks information from the wrong party.  Mr. Carter

seeks, inter alia, therapy records from MV2.  However, there is no evidence that MV2

has the sought-after therapy records in her possession, custody, or control.  *See* FED.

R. CRIM. PRO. 16(a)(1)(E); *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220

(1951) (noting the relationship between Rule 16 and Rule 17 and explaining the

purpose of Rule 17(c) "to expedite the trial by providing a time and place before trial

for the inspection of the subpoenaed materials").

Not only would be unusual for a patient to have copies of her therapist's notes,

there is also no evidence that MV2 has control of the records.  *Owens-Hart v. Howard

Univ.*, 317 F.R.D. 1, 6 (D.D.C. 2016) (observing in the civil context that courts have

concluded a patient does not control "medical records about her treatment, which are

in her doctor's possession") (citing *Clark v. Vega Wholesale Inc.*, 181 F.R.D. 470, 472

(D. Nev. 1998)); *but see Powell v. Texvans, Inc.*, No. 2:09-CV-01079-LDG, 2010 U.S.

Dist. LEXIS 125599, *4 (D. Nev. Nov. 18, 2010) (suggesting *Clark* and similar cases

"should no longer be followed" after the enactment of the Health Insurance

Portability and Accountability Act (HIPPA)).

Although "control" includes the legal right to obtain documents, such as

where "a party is able to command release of the documents by the person or entity

in actual possession," MV2 is not in control of the records because she cannot get her

therapist's notes.  *Clark*, 181 F.R.D. at 472.  Under the HIPAA implementing

14

regulations, an "individual has a right of access to inspect and obtain a copy of protected health information . . . except for [p]sychotherapy notes[.]" 45 C.F.R. § 64.524(a)(1)(i). Psychotherapy notes are defined as "notes recorded (in any medium) by . . . a mental health professional documenting or analyzing the contents of conversation during a private counseling session . . . and that are separated from the rest of the individual's medical record." 45 C.F.R. § 164.501. *Compare Escobar v. Benihan National Corporation*, No. CV 20-2447 (CPO/EAP), 2023 U.S. Dist. LEXIS 13586, *13-14 (D.N.J. Jan. 6, 2023) (§ 164.524(a)(1)(i) prevents a patient from obtaining psychotherapy records from her psychotherapist, but not a third party from doing so), *with Kalinoski v. Evans*, 377 F. Supp. 2d 136, 139 (D.C. Dist. 2005) (concluding that when a plaintiff has placed her mental health at issue, her psychotherapist notes are reasonably calculated to lead to the discovery of admissible evidence, and the plaintiff/patient has authorized their disclosure, a licensed social worker must disclose mental health records in response to a subpoena directed against the mental health professional). As psychotherapist records are not like other medical records, Mr. Carter has not satisfied the Court that MV2 has "control" of her therapist records. *Evenson v. Hartford Life & Annuity Ins. Co.*, 244 F.R.D. 666, 667 (M.D. Fl. 2007) (45 C.F.R. § 164.524(a)(1)(i) "specifically excludes psychotherapy notes from an individual's right of access").

Said differently, Mr. Carter has not demonstrated that MV2 is the proper person to subpoena for the psychotherapy records he seeks. Based on this record, the Court concludes that MV2 has only the facts that would confirm that she has sought

therapy and presumably when the therapy took place. Therapy notes would be kept by MV2's therapist, who has not been subpoenaed.[2] The Court could stop here, but in the interest of thoroughness, the Court will assume for the rest of the discussion, that Mr. Carter's subpoena is directed to MV2's therapist.

### iii.    MV2's Therapist's Records, if They Exist, Would Fall Within the Privilege

"[A] party asserting the psychotherapist-patient privilege must show that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment."

---

[2]    The Government intends to call MV2 as a trial witness, and at trial, Mr. Carter could question MV2 about whether she has seen a therapist and the dates of her sessions. MV2 has no claim of privilege in the fact she attended therapy, nor the dates attended. *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 230 (D. Mass. 1997) ("Facts regarding the very occurrence of psychotherapy, such as the dates of treatment, are not privileged. And so, for example, if Plaintiff was seeing a psychotherapist before any actionable emotional injury allegedly occurred, the dates of such pre-existing treatment would be available to Defendants. The substance of the psychotherapist-patient communication is privileged. The fact that such communication took place is not").

But to pursue this line of questioning, Mr. Carter would have to cross a substantial Rule 403 hurdle. It is difficult for the Court to conceive that a witness's consultation with a psychotherapist or the dates of their sessions—untethered to a relevant diagnosis or treatment and to the issues in the case—would be relevant to any of the issues before the jury. *United States v. Lopez*, 611 F.2d 44, 45 (4th Cir. 1979) (courts have prevented excursions during cross-examination into collateral matters of a purely personal nature have minor probative value, especially where a witness's psychiatric experiences are sought to attack the witness's credibility"); *United States v. Meintzschel*, 538 F. Supp. 3d 571, 582 (E.D.N.C. 2021) (noting that many psychiatric conditions have no relevancy to a witness's credibility). Situations where the witness has a conceded history of illegal drug use, long term psychiatric issues, and psychotherapy are more difficult. *See Newton v. Kemna*, 354 F.3d 778, 779-80 (8th Cir. 2004). In *Newton*, the Eighth Circuit observed that the defense in that case "could question [the witness] about her drug use, drinking, and mental health before and at the time that she observed the kidnapping, and at any time she testified." *Id.* at 780. Mr. Carter has made no suggestion that anything of the sort applies to MV2.

The potential prejudice under Federal Rule of Evidence 403 seems obvious: the jury might improperly discount MV2's credibility because she had been in some unknown form of psychotherapy. Before Mr. Carter's counsel asks any such questions, he must approach the bench and obtain the Court's express approval.

*In re Grand Jury Proc. (Gregory P. Violette)*, 183 F.3d 71, 73 (1st Cir. 1999) (citing *Jaffee*, 518 U.S. at 15).

None of these requirements is in dispute here.  The information sought is confidential, and there is no indication Mr. Carter questions the credentials of the therapist, nor that that any plainly exculpatory content in the records, if it exists, was made in the course of diagnosis or treatment.  Again, Mr. Carter has represented to the Court that he seeks only plainly exculpatory evidence in the form of MV2's statements to her therapist.  It is possible that no such records exist.  MV2's statements to her therapist might be inculpatory or consistent with her other statements, or the therapist may have never made a record of the victim's account. What Mr. Carter narrowly seeks—an exculpatory statement to MV2's therapist contained in therapy notes or records, if it even exists—is plainly covered by the psychotherapist-patient privilege.

Indeed, the assertion of the privilege is unusually strong in this case.  Though the Court cannot know whether MV2 spoke to her therapist about the December 2024 incidents nor whether the therapist took notes on the topic, the Court sees each possible iteration as squarely within the psychotherapist-patient privilege.  One possibility is that MV2 shared with her therapist an account consistent with her other statements about the December 2024 incident and the therapist's notes reflect that consistency.  Were this the case, defense counsel would not pursue evidence that corroborates the Government's account.

A second possibility is that MV2's therapist does not have any responsive

notes.  MV2 may not have mentioned the incidents to her therapist.  This could be true for myriad reasons and probing MV2 about why she may not have described the incidents to her therapist necessarily asks MV2 to reveal the topics she discussed in therapy.  Alternatively, MV2 may have mentioned the incident, but the therapist could have chosen not to take notes.  This possibility might lead to an extended and unnecessary aside on notetaking practices in the profession and the therapist's particular preferences.

Third, the therapist may have notes on the incident, but the probability that the therapist's notes are plainly exculpatory is farfetched.  No one, including Mr. Carter, alleges that the touching never happened or that MV2 fabricated the incident, and the Government proposes on calling some third-party witnesses who presumably will corroborate portions of MV2's testimony.  So, to be exculpatory, the therapist's notes would have to specifically state that Mr. Carter touched MV2 in an area outside of what 18 U.S.C. § 2246(3) designates as "sexual contact."  Even if MV2 did discuss the incident in detail, the therapist is unlikely to know there is a legally significant difference between "inner thigh" and "thigh," let alone take notes indicating the same.

The latter two possibilities implicate the heart of the psychotherapist-patient privilege, revealing the reason MV2 has been seeing a therapist, the topics the therapist and MV2 have discussed, the length and nature of their sessions, the therapist's note-taking practices, and other matters that undergird the therapist-patient bond.

   iv.  **Caselaw on the Sixth Amendment and the Psychotherapist-Patient Privilege**

The Court concedes that this area of the law is murky. *See* Clifford S. Fishman, *Defense Access to A Prosecution Witness's Psychotherapy or Counseling Records*, 86 OR. L. REV. 1, 4 (2007) ("the law on this subject has become an incredible hodgepodge of conflicting approaches and procedural conundrums").

Supreme Court and First Circuit precedent is not exactly on point.  At first glance, it appears that claims of privilege cannot be used to automatically defeat Rule 17 subpoenas and that courts remain solicitous of constitutional and evidentiary privileges, opting for in camera review to protect privileged materials.  For example, in *Nixon*, after holding that the Special Prosecutor's motion for subpoenas seeking pre-trial production of certain tapes and documents related to the President's conversations complied with Rule 17(c), the Supreme Court moved on to discuss the President's claim of executive privilege.  418 U.S. at 703-07.  The *Nixon* Court concluded "[t]he generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial." *Id.* at 713.  It then expressly affirmed the district court's decision to order in camera review of the subpoenaed materials. *Id.* at 714.

Likewise, in *LaRouche Campaign*, after holding that the Defendants' motion for subpoenas seeking pre-trial production of a putative key-witness's interview complies with Rule 17 over the National Broadcasting Company, Inc.'s (NBC) claim of journalistic privilege under the First Amendment, 841 F.2d at 1180-81, the First Circuit held "that the district court correctly determined that any First Amendment interest of NBC did not outweigh the defendants' interests in the production of the

subpoenaed material" for in camera inspection. *Id.* at 1182. However, *Nixon* and *LaRouche* do not concern the psychotherapist-patient privilege and *LaRouche*, by its own admission, is a "narrow[] holding" and "does not foreshadow allowance of a subpoena in the ordinary run of cases." *Id.*

The First Circuit has addressed the psychotherapist-patient privilege and found there is an applicable crime-fraud exception. *In re Grand Jury Proc. (Gregory P. Violette)*, 183 F.3d 71, 77 (1st Cir. 1999) (finding "[o]nly when communications are intended directly to advance a particular criminal or fraudulent endeavor will their privileged status be forfeited by operation of this exception"). However, the crime fraud exception is not at issue in this case. Neither is there any risk of harm to MV2 or others, an exception contemplated by the Supreme Court in *Jaffee*. 518 U.S. at 18 n.19 ("Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist"). From the Court's analysis of Supreme Court and First Circuit precedent there is no clear guidance for the issue before this Court.

Outside the Supreme Court and First Circuit, there is no consensus discussing the psychotherapist-patient privilege in the context of Rule 17 subpoenas. Courts that have considered the issue have landed across a sharp divide, disagreeing on whether in camera review is appropriate and whether the psychotherapist-patient privilege yields to the Sixth Amendment. Cautiously wading into the murky waters,

some courts have "ordered the production of records for in camera review so that the Court can determine whether the defendant is entitled to the records." *United States v. Blue*, 340 F. Supp. 3d 862, 870 (D.S.D. 2018).

In *Blue*, James Blue was charged with aggravated sexual abuse of two children, CB and WWK, from whom he sought counseling records, school records, and Department of Social Services records.  340 F. Supp.3d 862, 864 (D.S.D. 2018). Because some of those records were not covered by the psychotherapist-patient privilege, the court in *Blue* determined "in camera review will allow this Court to determine with certainty which records fall within the privilege . . . given the uncertainty about whether Blue has any constitutional right to the records and whether this right is paramount to the psychotherapist-patient privilege." *Blue*, 340 F. Supp. 3d at 870.  Here, on the other hand, the entirety of what Mr. Carter seeks from MV2's therapist is covered by the psychotherapist patient privilege and so there is no need for the Court to determine whether the records—if they exist—are subject to the privilege.

In *United States v. Landrom*, the defendant sought records from a minor victim who engaged a particular type of therapy that involved independent observations not subject to the privilege.  No. 4:23MJ84, 024 U.S. Dist. LEXIS 75357, *13 (E.D. Va. Apr. 24, 2024) (finding "it is also clear to the Court that the records may contain independent observations, disconnected from any such communication, that may not be privileged").  *See also Kinder v. White*, 609 F. App'x 126 (4th Cir. 2015) (finding "[t]he district court's preliminary order directing production of the records for *in*

*camera* review relied expressly on the West Virginia statute"); *United States v. Haworth*, 168 F.R.D. 660, 661 (D.N.M. 1996) (noting "[a]fter reviewing the records *in camera,* as well as the applicable law, the Court concludes that the records are privileged and not subject to discovery").

Even if MV2's therapy involved independent observations not covered by the privilege as in *Landrom*, Mr. Carter seeks notes on MV2's statements to her therapist, which falls directly within the privilege, and, unlike *Kinder*, Mr. Carter has pointed to no state statute authorizing in camera review.  As to *Haworth*, the court merely stated that in camera review took place, providing no reasoning as to why in camera review was appropriate.

By contrast, at least one court concluded that in camera review "would itself be a breach of the privilege."  *United States v. Shrader*, 716 F. Supp. 2d 464, 473 (S.D.W. Va. 2010), *aff'd*, 675 F.3d 300 (4th Cir. 2012), *cert. denied*, 568 U.S. 1049 (2012).  In reaching its conclusion, *Shrader* relied on a case where the government intended to present the testimony of a victim at a sentencing hearing to argue for an upward departure based on the victim's extreme psychological injury, and defendant sought the victim's psychotherapy records to potentially counter the victim's testimony.  *See United States v. Doyle*, 1 F. Supp. 2d 1187, 1189, 1191 (D. Or. 1998) (finding "defendant has requested the court to examine the contents of these files *in camera*" for "anything therein that could possibly be a mitigating factor with respect to the upward departure issue" but determining "[t]he court's review of the files would itself be a breach of the privilege").

22

Courts have reached different conclusions about whether the psychotherapist-patient privilege must bend to a defendant's constitutional rights of confrontation. Certainly, the Supreme Court in *Jaffee* discouraged the invasion of the psychotherapist-patient privilege. 518 U.S. 1, 17 (1996) ("[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege").

Subsequent decisions do not present a clear line. Some courts balance the victim's right of privacy against the defendant's right of confrontation. *See United States v. Mazzola*, 217 F.R.D. 84, 88 (D. Mass. 2003) (noting "the societal interest in guarding the confidentiality of communications between a therapist and his or her client is significant" but finding it did "not outweigh the need for effective cross examination of this key government witness at the criminal trial"); *Bassine v. Hill*, 450 F. Supp. 2d 1182, 1185-86 (D. Or. 2006) (distinguishing *Jaffee* as a civil case, and holding that the habeas petitioner's rights of confrontation, cross-examination, and due process outweighed the psychotherapist-patient privilege); *United States v. Hansen*, 955 F. Supp. 1225, 1226 (D. Mont. 1997) (finding the defendant's need for privileged material to outweigh the interests of the deceased victim and the public in preventing disclosure where the defendant moved under Rule 17(c) to subpoena treatment records from the deceased victim's psychiatrist); *United States v. Chee*, 191 F. Supp. 3d 1150, 1151, 1157 (D. Nev. 2016) (granting in camera review where a defendant charged with sexual contact with a child subpoenaed the only witness's

medical records to discern any medical issues or medications that would interfere with her ability to perceive the event); *United States v. Castillo*, No. 16-cr-20344, 2016 U.S. Dist. LEXIS 123792, *9 (E.D. Mich. Sept. 13, 2016) ("[g]iven that the victim is the sole witness in this matter and thus her credibility may be determinative of innocence or guilt, and given the harsh guidelines Castillo will face if convicted, Castillo's Confrontation Clause rights may be in tension with [the victim's] privileged records").

However other district courts have arrived at a different conclusion, noting that *Jaffee* rejected a balancing analysis. *United States v. Sheppard*, 541 F. Supp. 3d 793, 799 (W.D. Ky. 2021) (citing *Jaffee*, 518 U.S. at 17 (noting "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege"); *United States v. Shrader*, 716 F. Supp. 2d 464, 472 (S.D.W. Va. 2010) ("the psychotherapist-patient privilege is not subordinate to the Sixth Amendment rights of Defendant. Accordingly, the records sought by Defendant are protected by the privilege and are unavailable to Defendant"); *Kinder*, 619 F. App'x at 129-30 (rejecting the district court's conclusion that the psychotherapist-patient privilege included an exception where "necessary to vindicate a criminal defendant's constitutional rights"); *United States v. Haworth*, 168 F.R.D. 660, 660-62 (D.N.M. 1996) (holding, after motion for pretrial production under Rule 17(c) was granted and in camera review held, government witness's therapy records were protected under psychotherapist-patient privilege and

determining defendants "mistakenly equate their confrontation rights with a right to discover information that is clearly privileged"); *Doyle*, 1 F. Supp. at 1189 (noting that other privileged communications are not subordinate to the Sixth Amendment, and stating that *Jaffee* made clear that balancing tests are inappropriate); *United States v. White*, No. 22-CR-00401-GKF, 2023 U.S. Dist. LEXIS 224361, *9 (N.D. Okla. Dec. 18, 2023) (finding "the right to confrontation is a trial right that prevents improper restrictions on the types of questions defense counsel may ask during cross-examination" and so "there is no violation of the Confrontation Clause by denying a motion for the production of privileged documents") (citing *Penn. v. Ritchie*, 480 U.S. 39, 52, (1987) (Powell, J., op.)).

Even courts to have more generally considered the relationship between the psychotherapist-patient privilege and the Sixth Amendment have concluded that the privilege does not yield.  *See Newton*, 354 F.3d 779-82 (declining to apply a "balancing" approach to the psychotherapist-patient privilege in finding district court did not abuse its discretion in denying defendant's motion to discover the psychiatric records of prosecution's only eye witness); *United States v. Portillo*, 969 F.3d 144, 182 (5th Cir. 2020) (finding that defendant was not hampered in cross-examination when trial court denied production of government witness's psychiatric, psychological, and counseling records).  One district court explained:

> [C]ases concluding that the Sixth Amendment trumps the psychotherapist-patient privilege contradict the Supreme Court's emphatic language rejecting the use of a balancing test to weigh the psychotherapist-patient privilege against other interests: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy

and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege."

*United States v. DeLeon*, 426 F. Supp. 3d 878, 917 (D.N.M. 2019) (quoting *Jaffee*, 518 U.S. at 17). The *DeLeon* Court added, "the Sixth Amendment provides no grounds to conclude that the Defendants are entitled to access the witnesses' HIPAA-protected and privileged psychotherapy records to aid them in their cross-examination preparations." *Id.* at 918.

Given this divergence of authority, the Court declines to determine definitively whether the psychotherapist privilege allows for a balancing analysis, because in this case, Mr. Carter failed to demonstrate anything more than an attenuated possibility that exculpatory evidence could possibly exist in MV2's psychotherapy records. Thus, the Court denies Mr. Carter's subpoena for MV2's psychotherapy records because it amounts to a prohibited fishing expedition.

Unlike the cases where courts balanced the need for confrontation against the need for privacy and found that the privacy interests must yield, here Mr. Carter has failed to provide a factual predicate that would allow the Court to conclude that his imagined exculpatory evidence actually exists in MV2's psychotherapy notes. "In the end, there are too many logical leaps that must be made to believe there will be relevant, evidentiary material in the possession of" MV2's therapist. *White*, 2023 U.S. Dist. LEXIS 224361 at *13. "If the standard of relevance were set so low where a defendant could simply aver a possibility of another perpetrator or recantation, then a criminal defendant facing sexual assault charges could in every case seek in camera review of all sorts of records." *Blue*, 340 F. Supp at 871 (footnote omitted). In other

words, if there were a case whether a criminal defendant would be entitled to the psychotherapy records of a victim, this is not that case.

## V.    CONCLUSION

The Court DENIES Aiden J. Carter's Amended Motion for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3) (ECF No. 44) and DISMISSES as moot Government's Motion to Quash Defendant's Amended Motion for Issuance of Subpoenas on Victims Pursuant to Fed. R. Crim. P. 17(c)(3) (ECF No. 51).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of December, 2025